**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


**Michael F. Witteried,**
**Plaintiff Below, Petitioner**

**vs.)  No. 22-0105** (Jefferson County 21-C-143)

**City Council of the City of Charles Town,**
**A West Virginia Municipal Corporation,**
**Defendant Below, Respondent**


## MEMORANDUM DECISION


Petitioner Michael F. Witteried appeals two orders of the Circuit Court of Jefferson County.[1] In its January 9, 2022, order, the circuit court denied petitioner's motion to alter or amend its December 2, 2021, order. In the December 2, 2021, order, the circuit court granted Respondent City Council of the City of Charles Town's ("the City") motion to dismiss petitioner's civil action to stay the City's enforcement of the circuit court's December 13, 2016, order, affirmed by this Court in *Witteried v. City of Charles Town*, No. 17-0310, 2018 WL 2175820 (W. Va. May 11, 2018) (memorandum decision), which authorized the City to enter onto petitioner's property and abate various public nuisances found on the property. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The December 13, 2016, order affirmed in *Witteried* granted the City's petition for an injunction to abate public nuisances found on petitioner's "three adjoining parcels of real estate within the City." 2018 WL 2175820, at *1. Petitioner occupies the "Viener House" at 400 South George Street and owns a vacant and uninhabitable house at 416 George Street ("the Trapnell House").[2] *Id.* On Academy Street, petitioner owns a partially completed structure ("the carriage

---

[1]Petitioner is self-represented. Respondent City Council of the City of Charles Town appears by counsel Ancil G. Ramey and Michael J. Funk.

[2]In this Court's decision in *Witteried v. City of Charles Town*, No. 17-0310, 2018 WL 2175820 (W. Va. May 11, 2018) (memorandum decision), the Trapnell House is referred to as "the Victorian." *See Id.* at *1.

1

house") that he intends to use in its finished state as a location for his antique car collection on the first floor and as a residential apartment on the second floor. *Id.* at *1 and n.1. However, the construction of the carriage house has been protracted, having begun in approximately 2004.[3] *Id.* at *1.

In the December 13, 2016, order, with regard to the Trapnell House and the carriage house, the circuit court directed that the condition of each property constituted "a public nuisance and is hereby permanently enjoined," that the City had right of entry to go onto each property "to abate the nuisance conditions," and that petitioner was "enjoined from using [each] property for storage of any kind." With regard to the condition of all three of petitioner's properties as a whole, the circuit court found that "the general state of [petitioner's] real estate constitutes a public nuisance for the various reasons contained within this [o]rder, including the property's appearance as a construction supply depot." Accordingly, the circuit court "PERMANENTLY ENJOINED" the public nuisance that was the general state of the adjoining properties. The circuit court ordered petitioner to "remove all accumulation of materials, including building materials and equipment from [petitioner's] real estate within 45 days of the entry of this [o]rder," and, "[i]f the said nuisance conditions are not remedied . . ., the City is granted a right of entry onto the real estate to abate this nuisance[.]" The circuit court provided the City with "the discretion to assess the numerous nuisance conditions present upon the real estate."

In addition to these general provisions, the circuit court enjoined two specific items found on petitioner's property: vehicles and sea containers. The circuit court noted that the City's "treatment of the collectible car issue" was the action that petitioner "protested and resented [the] most." The circuit court not only reinstated a previously granted permanent injunction regarding petitioner's collectible cars but also amended that injunction to enjoin petitioner from parking more than six licensed and operable vehicles "*anywhere upon* [*petitioner's*] *real estate* and from storing or parking [the] same on any street in the City[.]" (Emphasis added.) The circuit court further found that there was "no structure" existing on the real estate, in which petitioner could lawfully store motor vehicles.

The circuit court specifically addressed sea containers, which are temporary storage structures able to hold materials necessary to complete the construction of the carriage house. Mediation between the parties involved the possibility of petitioner obtaining a new building permit for that structure.[4] However, as the circuit court noted, mediation ultimately failed and the sea containers were not being "maintained for [the] storage of materials incident to an active building permit[.]" Accordingly, the circuit court not only deemed the sea containers a nuisance

---

[3]In *Witteried v. International Residential Code Board of Appeals of City of Charles Town*, No. 14-0520, 2015 WL 3388561 (W. Va. Jan. 30, 2015) (memorandum decision), this Court affirmed the circuit court's order dismissing petitioner's writ of certiorari and affirming the decision of the City's international residential code board of appeals finding that petitioner's building permit for the carriage house had expired. *Id.* at *1.

[4]*See* Footnote 3, *supra*.

2

but further found that "the entire array of assorted building materials, the stacks of unexplained large containers of items that are hauled and stay in place for long periods of time, and the appearance of a never-ending and ever expanding raw construction site constitute a public nuisance."

During the pendency of petitioner's appeal in *Witteried*, the circuit court stayed the December 13, 2016, order. After this Court affirmed the December 13, 2016, order, petitioner filed a petition for rehearing, and this Court's mandate did not issue until October 18, 2018. Thereafter, in 2021, the City began taking actions to enforce the December 13, 2016, order, such as removing and storing personal property from petitioner's real estate. The parties disputed whether the December 13, 2016, order authorized the City to enter petitioner's real estate for the purpose of removing several portable fabric garages petitioner placed throughout his adjoining properties. According to petitioner, three of the portable fabric garages existed on his properties in December of 2016. At the December 1, 2016, final hearing in the parties' previous case, the City's zoning administrator testified that the portable fabric garages did not constitute a permissible "storage apparatus for any length of time."

Petitioner believes that, because the December 13, 2016, order does not specifically mention the portable fabric garages, he may use them to attempt to comply with the order by storing building materials and vehicles, above the six vehicles that order allows him to park on his real estate. However, in the December 13, 2016, order, the circuit court noted the "20-plus year history" of the parties having disputes over petitioner's use of his real estate and found that, during the previously ordered injunction regarding his collectible cars, petitioner "demonstrated that he will circumvent the intentions of the [c]ourt's order" by moving his antique cars and old military vehicles onto the City streets to create "the appearance of a 'war zone' and perhaps his own version of a private auto show[.]" The circuit court further noted that, while it ruled in July of 2007 that petitioner's parking of the antique cars on his real estate was "not grandfathered" as a permitted non-conforming use under the City's zoning ordinance, that issue remains "unresolved in the mind of [petitioner,] who simply will not abide by the law of the case."

Nevertheless, in October of 2021, petitioner filed the instant action in the circuit court to stay the City's enforcement of the circuit court's December 13, 2016, order, specifically, the removal of the portable fabric garages from his real estate. Because petitioner wanted to bring the parties' dispute over the enforcement of the December 13, 2016, order before the City's board of zoning appeals, his action included a request for a writ of mandamus and/or prohibition against the board, the zoning administrator, and/or the city manager to compel a hearing on the dispute before the board. In its December 2, 2021, order dismissing petitioner's instant action,[5] the circuit court

---

[5]Three days before the entry of the circuit court's December 2, 2021, order dismissing petitioner's instant action, petitioner filed a petition for declaratory judgment. The circuit court dismissed that additional claim, by order entered on December 3, 2021, finding that petitioner (1) failed to file a motion for leave to amend his complaint; and (2) merely "re-package[d] the same arguments" that the circuit court rejected in its December 2, 2021, order. To the extent that petitioner appeals the December 3, 2021, order, we find that the circuit court properly rejected his (continued . . .)

3

determined that the board of zoning appeals "has no power, authority, or jurisdiction to consider [p]etitioner's purported appeal, let alone any legal duty to consider the same, and [p]etitioner accordingly has no clear legal right to a hearing on and consideration of said purported appeal."

In petitioner's motion to alter or amend the December 2, 2021, order, he conceded that his request for relief in mandamus and/or prohibition was not properly made, but seemingly conditioned his concession on the circuit court amending its ruling that the December 13, 2016, order authorized the City to enter onto petitioner's real estate and remove the portable fabric garages. Petitioner argued that the circuit court should instead provide him with a jury trial on that issue or remand it to the board of zoning appeals for a decision, which he could then appeal to the circuit court if needed. The circuit court, by order entered on January 9, 2022, rejected petitioner's arguments and denied the motion to alter or amend the December 2, 2021, order.

Petitioner now appeals the circuit court's December 2, 2021, and January 9, 2022, orders. We have held that the standard of review for a Rule 59(e) motion to alter or amend a judgment "is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. Am. Travellers Life In. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998). Therefore, we apply the standard applicable to motions to dismiss and review the dismissal of petitioner's amended complaint de novo. Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick*, 194 W. Va. 770, 461 S.E.2d 516 (1995). Rule 12(b)(6) of the West Virginia Rules of Civil Procedure provides that an action may be dismissed for "[a] failure to state a claim upon which relief can be granted."

Initially, we find that petitioner's assignments of error on appeal are unclear; this makes it difficult for this Court to determine the number and exact nature of the errors that petitioner alleges. Petitioner also argues errors in the argument section of his brief that have significantly altered language and a different order from the assignments of error section. Therefore, we decline to consider any alleged error that we cannot decipher pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which provides, in pertinent part, that "[petitioner's] brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error." *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal."); *State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (finding that cursory treatment of an issue is insufficient to raise it on appeal).

However, "[w]hen a litigant chooses to represent himself, it is the duty of the trial court

---

petition for declaratory judgment because, as explained *infra*, we affirm the December 2, 2021, order dismissing petitioner's instant action. *See Johnson v. Pinson*, 244 W. Va. 405, 415, 854 S.E.2d 225, 235 (2020) (finding that "[i]t is not an abuse of discretion to deny a motion to amend if the proposed amendment would be futile") (internal quotations and citations omitted).

[and this Court] to [e]nsure fairness, allowing reasonable accommodations for the [self-represented] litigant so long as no harm is done an adverse party[.]" *State ex rel. Dillon v. Egnor*, 188 W. Va. 221, 227, 423 S.E.2d 624, 630 (1992) (internal quotations and citations omitted). Accordingly, we will address the two issues that we find constitute the essence of petitioner's appeal, that the circuit court erred in (1) finding that the City's entry onto petitioner's real estate to abate the public nuisances was authorized by the December 13, 2016, order and (2) interpreting the December 13, 2016, order as authorizing the City's removal of the portable fabric garages from petitioner's real estate. *See Franklin v. Pence*, 128 W. Va. 353, 356, 36 S.E.2d 505, 508 (1945) (recognizing that the assignments of error were general in nature making it "difficult to determine the exact points relied upon for reversal[,]" and causing the Court to rely upon "statements in the brief" that were "considered as indicating the main grounds of attack upon the judgment").

For petitioner's first argument, he relies upon *Caniglia v. Strom*, 141 S.Ct. 1596 (2021), in which the Supreme Court declined to hold that law enforcement officers' community caretaking functions justify warrantless searches and seizures in the home. *Id.* at 1598. Accordingly, petitioner argues that the City must obtain a search warrant before it enters onto his real estate to abate the conditions that the December 13, 2016, order deems as causing a public nuisance. *See id.* at 1599 (finding that the "most familiar" examples of permissible invasions of the home and curtilage are searches and seizures authorized by a warrant). In these circumstances, however, the Fourth amendment is not implicated and petitioner's argument is without merit. Accordingly, we concur with the circuit court's finding that, as authorized by the December, 13, 2016, order, "[the City] has only removed and stored, and shall only remove and store, personal property from [p]etitioner's real estate as necessary to abate the various nuisances."[6]

With regard to the second issue we have identified, we note that "[t]he interpretation of a court's order is a question of law, which we [also] review *de novo*." Syl. Pt. 6, in part, *State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell*, 228 W. Va. 252, 719 S.E.2d 722 (2011). Petitioner argues that, because the December 13, 2016, order does not specifically address portable fabric garages, he may continue using the portable garages on his real estate to store vehicles and building materials. As petitioner concedes that portable fabric garages existed on the real estate in December of 2016 and that the zoning administrator testified that their use was not permitted, his only viable argument is that, in specifically stating that petitioner's vehicles and sea containers created nuisances, the December 13, 2016, order does not hold that the portable fabric garages were also nuisances. However, the December 13, 2016, order explicitly (1) permanently enjoins the public nuisance that was the general state of petitioner's real estate; (2) finds that there was *no structure* thereon in which petitioner could lawfully store vehicles; and (3) directs the removal of all building materials and equipment. Thus, we concur with the circuit court's finding that "[t]he [portable] fabric garages are certainly included in the general state of [petitioner's] real estate[,] to which [the] remedy [provided by the December 13, 2016, order] applies." Therefore, we conclude

---

[6]The circuit court noted that petitioner is permitted to retrieve his property on the condition that he does not return it to his real estate in a manner that would reconstitute a nuisance.

that the circuit court did not err in granting the City's motion to dismiss petitioner's civil action to stay the City's enforcement of the circuit court's December 13, 2016, order from the parties' prior case.[7]

For the foregoing reasons, we affirm the circuit court's January 9, 2022, order denying petitioner's motion to alter or amend judgment and its December 2, 2021, order granting the City's motion to dismiss petitioner's civil action.

Affirmed.

**ISSUED:** March 7, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

**DISQUALIFIED:**

Justice C. Haley Bunn

---

[7]Because the interpretation of the circuit court's December 13, 2016, order constitutes a question of law, we reject petitioner's argument that he is entitled to a jury trial on the issue of whether the December 13, 2016, order authorizes the City's removal of the portable fabric garages from petitioner's real estate.